UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BONITA FILS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-2134 |
| | § | |
| INTERNET REFERRAL SERVICES, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM & ORDER

Before the Court is Defendant Internal Referral Services, LLC's (IRS) Motion to Compel Arbitration (Doc. 8). The Court previously denied the Motion to Compel. (*See* Doc. 32 at 1.) In connection with IRS's Motion to Stay Proceedings Pending Appeal (Doc. 36), the Court reviewed its ruling on the Motion to Compel and indicated to the parties that it believed it had erred. The Court is grateful for the parties' helpful briefing and oral argument in revisiting this issue. Based on those submissions, the Court concludes, for the reasons stated below, that the Motion to Compel Arbitration should have been granted.

**I.   Background**

This case arose from Plaintiff Bonita Fils' purchase of tickets to the 2020 Houston Rodeo through a ticket-resale website operated by IRS. (Doc. 1 at 5.) The Rodeo was canceled due to the global pandemic, and Fils alleges that IRS declined to refund her purchase. (Doc. 1 at 7.) IRS has since refunded the purchase. (Doc. 8 at 4.) Nonetheless, Fils filed this action pleading various common law claims, a claim under the Texas Deceptive Trade Practices Act (DTPA), and a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–12.

IRS moved to compel arbitration. (Doc. 8 at 1.) Its motion was based on "Terms and

1

Conditions" to which Fils had to indicate agreement prior to completing her purchase. (Doc. 1 at 7–12.) Among the Terms and Conditions was the following arbitration agreement:

> **23.1 Arbitration and Waiver of Trial by Jury:** You, on the one hand, and Company and Vendor, on the other hand, each agree that any and all disputes, controversies, or claims arising out of or relating to: (i) these Terms; (ii) your use of or access to this Website; (iii) Company's and Vendor 's services; or (iv) any tickets or other items viewed through this Website shall be resolved exclusively through final and binding arbitration in Chicago, Illinois, rather than in court. . . . You further agree that exclusive jurisdiction for any such arbitration will be Chicago, Illinois. . . . The arbitrator will decide the substance of all claims in accordance with the laws of the state of Illinois. . . .

(Doc. 8-3 at 12.)

IRS argued that this provision required Fils to arbitrate her claim. In response, Fils argued, *inter alia*, that the arbitration agreement was void under Texas law because it reserved to IRS a unilateral right of modification. That argument was based, in turn, on this section of the Terms and Conditions:

> **4. Changes in Terms.** We reserve the right, in our sole discretion, to change these Terms at any time. If we change any term or condition, such modification, revision and additional information shall be posted here and shall automatically replace the prior version of these Terms and become binding on all users of this Website. Your continued use of this Website following our posting of the revised Terms constitutes your acceptance of the revised Terms.

(Doc. 8-3 at 3.)

The Court agreed and denied the Motion to Compel at the September 24, 2020, Motion Hearing. The Court believed that Texas law applied in assessing the legality of the arbitration agreement because the choice-of-law provision contained in the arbitration agreement itself stated that the "substance of all claims" would be decided under Illinois law. The Court understood that provision to leave procedural questions to Texas law—and Texas law invalidates arbitration agreements that can be unilaterally modified by one party. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). But the Court overlooked an additional choice-of-law provision

contained later in the Terms and Conditions, which states, "[t]hese Terms, the use of this Website, . . . and any sale of tickets hereunder will be governed by the laws of the State of Illinois." (Doc. 35-3 at 13.)

Realizing this oversight, the Court asked the parties to brief whether Illinois law should apply in assessing the legality of the arbitration agreement, and if so, whether the arbitration agreement was valid under Illinois law.

## II.     Discussion

On reconsideration, Fils does not dispute that Illinois law applies in assessing the enforceability of the arbitration agreement. (*See* Doc. 43 at 2–3.) Therefore, the only question is whether the arbitration agreement is enforceable under Illinois law. It is.

Illinois, unlike Texas, allows parties to retain a right to unilaterally modify an arbitration agreement. *See Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1143 (Ill. 1999) (noting that unilateral modification is permissible where a party "previously reserved the right to do so"); *Bielat v. 3DR Lab'ys, LLC*, No. 1-13-3595-U, 2014 WL 4462899, at *4 (Ill. Ct. App. Sept. 10, 2014). Therefore, the arbitration agreement is not subject to invalidation under Illinois law on the same basis on which the Court denied the Motion to Compel under Texas law.

Fils makes various other arguments as to why the arbitration agreement is unenforceable under Illinois law, but none is persuasive.

Fils first argues that only prospective unilateral modification—not retroactive unilateral modification, as allowed by the contract here—is permissible in Illinois. But the case she cites for this proposition, *Williams v. TCF National Bank*, No. Civ. A. 12-5115, 2013 WL 708123 (N.D. Ill. Feb. 26, 2013), does not support it. Rather, *Williams* discussed the prospective-retroactive distinction only to distinguish "two out-of-jurisdiction cases" that did not "appl[y] Illinois contract

3

law." *Id.* at \*10. The Illinois cases, by contrast, do not make any distinction between prospective and retroactive unilateral modification; both forms of unilateral modification appear to be permissible in Illinois. *See Bielat*, 2014 WL 4462899, at \*4. Therefore, the arbitration provision, even if it can be retroactively modified—a question that the parties dispute but that the Court need not resolve—is valid under Illinois law.

Fils next contends that the contract is illusory for lack of consideration. This argument is meritless. Fils agreed to IRS's Terms and Conditions in exchange for a ticket to the Houston Rodeo, which indisputably constitutes consideration. Fils appears to argue that IRS could have revoked Fils's ticket, and thereby vitiated any consideration it might have given her, by modifying its Terms and Conditions. Yet Fils cannot point to any provision in the Terms and Conditions that could plausibly be modified to nullify an individual ticket purchase. Fils also seems to suggest that the very fact she did not attend the Houston Rodeo proves a lack of consideration. But her ticket was not invalidated through any act of IRS's; rather, a global pandemic caused the cancellation of the Houston Rodeo. And the fact that the ticket was only valuable in the event the Houston Rodeo proceeded as planned does not render IRS's promise illusory; indeed, in Fils's leading authority, *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 641 N.E.2d 861 (Ill. Ct. App. 1994), the Illinois Court of Appeals held that a promise contingent upon the occurrence of an event constitutes valid consideration. *Id.* at 864. For all those reasons, the contract is supported by valid consideration under Illinois law.

Fils further argues that there was no "meeting of the minds" between the parties because the Terms and Conditions were not clearly presented to Fils. This argument is belied by Fils's screenshot of the IRS website, which clearly requires a user to tick a box agreeing to the Terms and Conditions, which in turn are hyperlinked for the reference of any interested user. Fils contends

that the summary IRS provides of its Terms and Conditions next to the box requiring the user to indicate agreement is misleading because it does not expressly reference arbitration. But Fils provides no authority from any court, much less an Illinois court, to support the proposition that an online vendor must summarize every term in its terms and conditions before a user can agree to them. In fact, Illinois courts have held the opposite. *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122 (Ill. Ct. App. 2005) (sustaining an arbitration agreement contained in online terms and conditions because the website's unexplained reference to terms and conditions would "place a reasonable person on notice that there were terms and conditions attached to the purchase and that it would be wise to find out what the terms and conditions were before making a purchase"). Fils relies heavily on *Wilson v. Redbox Automated Retail*, 448 F. Supp. 3d 873 (N.D. Ill. 2020), but in that case—which presented a "close call"—the defendant's website never required users to specifically assent to its terms and conditions. *Id.* at 883. This case, by contrast, is more analogous to the cases expressly distinguished in *Wilson* that involved websites "where a consumer has an opportunity to review the terms and conditions in the form of a hyperlink placed directly adjacent to the button by which the consumer manifests assent." *Id.* In short, then, Fils was put on notice of the Terms and Conditions and she manifested her assent them by ticking a box indicating her agreement.

      Finally, Fils argues that the arbitration agreement is invalid because it "forces [her] to arbitrate her case in Chicago" and thereby "incur the significant travel costs to Chicago." (Doc. 43 at 15.) Fils provides no evidence that arbitration in Chicago would force her to incur such costs. It is unlikely Fils's counsel, much less Fils herself, needs to travel to Chicago for an arbitration hearing. As IRS notes, "To the extent an arbitrator decided to conduct a hearing on a $200 claim, it could be held by Zoom, telephonically, or by submissions—especially since there are few if any disputed facts." (Doc. 44 at 16.) The Court agrees, although it is willing to reconsider this point if

Fils submits evidence that her presence in Chicago would be required for arbitration. Otherwise, this argument fails.

### III.    Conclusion

In sum, the Court **VACATES** its previous Order denying IRS's Motion to Compel Arbitration and Dismiss (Doc. 8) and instead **GRANTS** that Motion. For that reason, the Court **DENIES AS MOOT** IRS's pending Motion to Dismiss (Doc. 35) and Motion to Stay (Doc. 36).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 29th day of December, 2020.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE